[Cite as *State v. Tingler*, 2022-Ohio-3792.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 : CASE NO. 21CA3962

    v.                                  :

ROBERT S. TINGLER,                      : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                :

_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for appellant[1].

Shane Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:10-19-22
ABELE, J.

{¶1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. After Robert S. Tingler, defendant below and appellant herein, pleaded guilty to possession of cocaine and tampering with evidence, the trial court sentenced him to serve 30 months in prison.

_____

[1] Different counsel represented appellant during the trial court proceedings.

**{¶2}** Appellant assigns two errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE DEFENDANT-APPELLANT WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE WHEN THE TRIAL COURT ARBITRARILY REFUSED TO PERMIT THE DEFENDANT-APPELLANT TO RETAIN COUNSEL OF HIS CHOICE."

SECOND ASSIGNMENT OF ERROR:

"THE DEFENDANT-APPELLANT WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DUE TO A CONFLICT OF INTEREST OF APPOINTED COUNSEL."

**{¶3}** In May 2016, a Scioto County Grand Jury returned an indictment that charged appellant with (1) possession of cocaine in violation of R.C. 2925.11(A), a fifth-degree felony, (2) possession of heroin in violation of R.C. 2925.11(A), a fourth-degree felony, and (3) tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. At appellant's December 10, 2020 video arraignment[2], appellant entered a not guilty plea and the trial court appointed counsel.

**{¶4}** At the June 22, 2021 pretrial hearing, the trial court noted that it had received appellant's handwritten letter, dated June 1, 2021, that requested substitution of counsel. The court

---

[2] According to appellant's brief, it appears that the delay between indictment and arraignment is due to appellant's incarceration for previous offenses committed in Franklin County.

asked, "[s]ince that time that you've written me that letter have you had an opportunity to meet with [appointed counsel] and discuss your case?" Appellant stated, "Yes, I have." When asked, "[h]ave you worked through those issues about your satisfaction with your counsel," appellant replied, "[y]es, Your Honor. At this time, you know, the - - for the interest of the Court, just move it along. I would like to withdraw that motion."

{¶5} Subsequently, appellant rejected the state's plea offer and, on August 2, 2021, the parties appeared for jury trial. That morning, with the jury waiting to be seated, appellant informed the trial court that he wished to raise several issues, including: (1) the state failed to serve him with a copy of the indictment, (2) defects exist in the indictment, (3) counsel should have filed a motion to dismiss based on speedy trial violation, (4) counsel should have filed a motion to suppress evidence, and (5) appellant did not receive discovery until 48 hours before trial.

{¶6} At that point, the court served appellant with another copy of the indictment, informed appellant it found no defects in the indictment, and observed that the speedy trial deadline had not yet expired. Trial counsel also informed the court that he did not file a motion to suppress evidence because it would have been frivolous, that appellant received discovery "when he first came

down here from prison," and what appellant received 48 hours before is the "exact same thing as his discovery. So, he's got to review the exact same thing." Counsel further stated that he had difficulty convincing appellant to review a video of appellant and his co-defendant, but eventually, counsel "made him watch it."

{¶7} Although appellant stated he "had issues with this attorney from the very beginning," the trial court noted that it had previously addressed this issue. Appellant then stated that he did not hear from his attorney since his December arraignment and he wanted a new attorney. When asked if he hired a new attorney, appellant replied he had not. Appellant further stated that he instructed counsel to file a motion to withdraw as counsel. The court, however, noted, "If you've not hired one to be here today I'm going to find that that's not timely and we're going to bring the jury in and start the trial here in about five minutes."

{¶8} At that juncture, appellant decided to become enraged and curse at the trial court. Ultimately, the bailiff and a deputy sheriff threatened appellant with a taser and restrained him. The court described the situation:

> Mr. Tingler appeared here without restraints per - - I believe pursuant to a previous order of this Court, even though he's currently incarcerated on other charges in the Department of Corrections. During that he became dissatisfied with the Courts rulings, dissatisfied with his counsel. I'd indicated to him that we would be

proceeding with the trial here today. During that time he jumped up from his chair, slung the Defense counsels papers across the courtroom, began pacing back and forth. The Bailiff had to pull a taser to get him to sit back down in his chair, which took some time. He's now been restrained. Based on the Defendants conduct here in the court I'm going to find that he poses a danger to the court participants and to the jury if he'd remain unrestrained during the trial, and I'm going to order that he be restrained during the trial.

Now, Mr. Tingler, I'll tell you right now we're not going to put up with that conduct in front of the jury. If you do that again, or if you act out, you interrupt these court proceedings I will remove you from the courtroom and we'll proceed with this trial without you present.

When the court asked appellant if he understood the situation, appellant did not answer. A few minutes later, appellant's counsel advised the court that appellant asked him to withdraw from the case. However, after the court denied the motion and during the recess, appellant composed himself and discussed a proposed plea agreement with counsel and for an 18 month concurrent sentence. The court stated, "I'd indicated in chambers that at this point I'm not going to agree to any sentence bargaining." After another recess, appellant decided to plead guilty to counts one and three.

{¶9} At the change of plea hearing, the trial court advised appellant of his constitutional rights, reviewed postrelease control and the maximum penalties. Appellant then pleaded guilty to (1) possession of cocaine in violation of R.C. 2925.11(A), a

fourth-degree felony, and (2) tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. At sentencing, the court acknowledged appellant "did act out before the jury was brought into the courtroom, but ultimately he complied with the request of the Court staff and the deputies, so I'm not going to hold that conduct against him for purposes of sentencing." Consequently, the court sentenced appellant to serve (1) six months in prison for possession, and (2) 30 months in prison for tampering, with the sentences to be served concurrently with each other and consecutively to appellant's current prison sentence. Finally, the court ordered appellant to serve an optional three-year postrelease control term. This appeal followed.

I.

{¶10} In his first assignment of error, appellant asserts that the trial court denied him his Sixth Amendment right to counsel when it refused to permit him "to retain counsel of his choice."

{¶11} Initially, we point out that appellant entered guilty pleas to the two offenses. Generally, a guilty plea waives all appealable errors, including claims of ineffective assistance of counsel, except to the extent that the alleged errors precluded appellant from knowingly, intelligently and voluntarily entering his guilty plea. *State v. Colon*, 8th Dist. No. 104944, 99 N.E.3d.

1197; *State v. Geiga,* 157 Ohio App.3d 112, 809 N.E.2d 673, 2004-Ohio-2124. Although appellant in the case at bar expressed general displeasure with trial counsel, appellant does not provide any basis or reason for a claim that this guilty plea was less than knowing, intelligent and voluntary. Nevertheless, in the interest of justice we will review appellant's assignments of error.

{¶12} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provides that defendants in all criminal proceedings shall have the assistance of counsel for their defense. To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) counsel rendered a deficient performance, and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must prove that counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. Additionally, a court need not analyze both Strickland test prongs if it can resolve the claim under one prong*. See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *State v. Bowling*, 4th Dist. Jackson No. 19CA2, 2020-Ohio-813, ¶ 12-13.

**{¶13}** When a court examines whether counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, 466 U.S. 668, 104 S.Ct. 2052. Moreover, because a properly licensed attorney is presumed to execute all duties ethically and competently, *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, to establish ineffectiveness, a defendant must demonstrate that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland* at 687, 466 U.S. 668, 104 S.Ct. 2052.

**{¶14}** The right to counsel "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-25, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). Moreover, "[a] criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.,* quoting *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1982); *State v. Beem*, 5th Dist. Licking No. 2019CA00062, 2020-Ohio-2964, ¶ 29.

SCIOTO, 21CA3962

{¶15} Appellant argues that the trial court deprived him of his right to counsel when it refused to permit him to retain counsel of his choice. We point out, however, that at any point in the proceedings, from appellant's arraignment to his change of plea, appellant could have retained any counsel, at his expense. We find nothing in the record to indicate in any manner that the trial court prohibited or interfered with this endeavor. Thus, because appellant did not attempt to retain counsel, the issue here appears to be appellant's desire to have the court replace his court appointed counsel.

{¶16} "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140, 148 (1988). Thus, "[a] defendant has only a presumptive right to employ his own chosen counsel." *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929, 937 (1998).

{¶17} However, the right to counsel of choice "is not absolute * * * and courts have 'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the

demands of its calendar.'" *State v. Oliver*, 2018-Ohio-602, 106 N.E.3d 300, ¶ 5 (10th Dist.), quoting *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 26, quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Thus, a trial court's "difficult responsibility of assembling witnesses, lawyers and jurors for trial 'counsels against continuances except for compelling reasons.'" *State v. Howard*, 5th Dist. Stark No. 2012CA00061, 2013-Ohio-2884, ¶ 40, quoting *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

{¶18} Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996). In addition, courts should "balanc[e] * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id.; State v. Jones,* 91 Ohio St.3d 335, 342-43, 744 N.E.2d 1163 (2001).

{¶19} Generally, a defendant bears the burden to demonstrate

that substitute counsel is warranted. *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (4th Dist.1998). Once an indigent defendant questions the adequacy of assigned counsel during trial, a court must inquire into the complaint on the record. *Id.* "Decisions relating to the substitution of counsel are within the sound discretion of the trial court." *Jones, supra,* at 343; *Frazier* at ¶ 26, citing *Wheat* at 159. This court has held:

> [A]n indigent defendant is entitled to new counsel 'only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.' *State v. Edsall* (1996), 113 Ohio App.3d 337, 339, 680 N.E.2d 1256; see, also, *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559; *Pruitt*, 18 Ohio App.3d at 57, 480 N.E.2d 499.

*State v. Newland,* 4th Dist. Ross No. 02CA2666, 2003-Ohio-3230, ¶ 11.

**{¶20}** In addressing the factors courts use to determine whether a trial court erred in denying a defendant's motion to substitute counsel, we first observe that appellant's morning of trial request for substitute counsel was not timely. Due to appellant's indigence, the trial court appointed counsel at appellant's December 14, 2020 arraignment. On June 10, 2021, appellant filed a pro se motion to substitute counsel and asserted that, since his arraignment, no communication occurred between appellant and

appointed counsel and that counsel "completely failed at his constitutional obligation to represent [him] adequately and effectively. Current counsel has been more of an asset to the prosecution than to the defense, hereby making it impossible to mount an adequate defense." However, at the June 22, 2021 pretrial hearing, appellant opted to withdraw his motion to substitute counsel.

{¶21} Our review of the record reveals that appellant failed to seek trial counsel substitution until the morning of his jury trial, and this fact must weigh heavily against him. *See State v. Spencer*, 10th Dist. Franklin No. 16AP-444, 2017-Ohio-1140, ¶ 9 (request for substitute counsel untimely on morning of trial); *State v. McCoy*, 188 Ohio App.3d 152, 2010-Ohio-2639, 934 N.E.2d 971, ¶ 48 (2d Dist.)(suggestion of bad faith when motions to substitute counsel made day of trial, particularly when trial date set for some time).

{¶22} The second factor in the analysis is the adequacy of the trial court's inquiry into the defendant's request. Here, at the June 22, 2021 pretrial hearing, the trial court thoroughly inquired about appellant's motion to substitute counsel. When asked if he had "worked through those issues about your satisfaction with your

SCIOTO, 21CA3962

counsel," appellant replied, "[y]es, Your Honor. At this time, you know, the - - for the interest of the Court, just move it along. I would like to withdraw that motion."

**{¶23}** On the morning of the jury trial, appellant again raised the issue and argued that counsel did not spend enough time with him, did not file a motion to suppress evidence, did not file a motion to dismiss based on a speedy trial violation, and did not allow him to review discovery until 48 hours before trial. Appellant further argued that he did not receive a copy of the indictment and challenged the indictment as defective. However, as we noted above, counsel informed the trial court that a motion to suppress would have been frivolous, appellant received another copy of the indictment, the court informed appellant that no defects appear in the indictment and that no speedy trial violation had occurred. Thus, after the trial court fully discussed this matter with appellant on the record, the court gave appellant time to compose himself and move forward.

**{¶24}** As detailed above, in the case sub judice the trial court inquired about appellant's concerns both at a pretrial hearing and again when the parties appeared for jury trial. Thus, in view of the fact the trial court adequately inquired about appellant's complaint and his request for substitute counsel, this factor

weighs against appellant.

{¶25} Another factor courts must consider when evaluating a request for substitute counsel is whether an alleged conflict between an attorney and client is so great that it results in a total lack of communication and prevents an adequate defense. *Jennings, supra,* 83 F.3d 145 at 148; *see also State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999); *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). However, whether counsel is court-appointed or privately retained, the Sixth Amendment guarantees competent representation but "does not include the right to develop and share a 'meaningful attorney-client relationship" with one's attorney. *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, ¶ 12 (1st Dist.). Moreover, "[h]ostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel." *Newland*, *supra,* 2003-Ohio-3230, at ¶ 11, citing *State v. Henness*, 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686.

{¶26} In the case at bar, appellant appeared to be dissatisfied with his representation and argued he did not review discovery materials until "thirteen minutes, two days before trial." Apparently, appellant's courtroom outburst underscored his

frustration with the situation. However, appellant did not present evidence of a total breakdown in communication. Further, appointed counsel informed the court that he met with appellant, encouraged appellant to view discovery, and prepared to proceed at trial.

**{¶27}** Finally, as appellee notes, appellant did not present any evidence of prejudice. In exchange for appellant's guilty plea to possession of cocaine and tampering with evidence, the state dismissed the heroin possession charge, a fourth-degree felony. Furthermore, the trial court did not impose a maximum sentence. As such, after our review we conclude that the trial court properly exercised its discretion to deny appellant's morning of trial request for a last-minute substitution of counsel.

**{¶28}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶29}** In his second assignment of error, appellant asserts that a particular conflict with appointed counsel denied him his Sixth Amendment right to effective assistance of counsel. Appellant supplemented the record with a docket sheet, appointment of counsel, and motion to withdraw to demonstrate that his appointed counsel also briefly served as the appointed counsel for appellant's co-defendant Rieser, which, appellant contends,

constitutes successive representation. Appellee argues, however, that appellant failed to show any prejudice.

{¶30} Successive representation occurs when defense counsel has previously represented a co-defendant or a trial witness. *Moss v. United States,* 323 F.3d 445, 459 (6th Cir.2003). Successive representation "differs materially" from simultaneous representation because "the attorney is no longer beholden to the former client." *State v. Jones,* 5th Dist. Stark Nos. 2007-CA-00041, 2007-Ohio-00077, 2008-Ohio-1068, ¶ 77. "The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Moss* at 460. The attorney could be "tempted to use confidential information to impeach the former client; or * * * may fail to conduct a rigorous cross-examination for fear of misusing his confidential information." *State v. Stephenson,* 10th Dist. Franklin No. 13AP-609, 2014-Ohio-670, ¶ 16, citing *U.S. v. Agosto*, 675 F.2d 965, 971 (8th Cir.1982).

{¶31} "[W]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." *State v. Gillard*, 64 Ohio St.3d 304, 311, 595 N.E.2d 878

(1992). "Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or 'adverse effect' will be presumed." *Id.* at 312. However, "a trial court's failure to inquire into a possible conflict of interest does not transform a possible conflict into an actual one nor does it automatically require a retrial, for such retrial would be premature." *State v. Beamon*, 12th Dist. Butler No. CA2018-04-065, 2019-Ohio-443, ¶ 26, citing *State v. Gillard*, 78 Ohio St.3d 548, 552, 679 N.E.2d 276 (1997)(*Gillard II).*

{¶32} To establish that an actual conflict of interest existed, an appellant must demonstrate two elements. *State v. Laghaoui*, 2018-Ohio-2261, 114 N.E.3d 249, ¶ 22 (12th Dist.). First, the appellant must show that " 'some plausible alternative defense strategy or tactic might have been pursued.' " *Gillard II* at 552, quoting *United States v. Fahey,* 769 F.2d 829, 836 (1st Cir.1985). Second, the appellant must " 'establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's loyalties or interests.'" *Id.*, quoting *Fahey* at 836.

{¶33} An "actual conflict of interest," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects

counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), fn. 5. To prove an "actual conflict of interest," the defendant must show that his counsel "actively represented conflicting interests," and that the conflict "actually affected the adequacy of his representation." *Id.*, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

{¶34} In *State v. McDonald,* 4th Dist. Lawrence No. 09CA4, 2009-Ohio-5132, trial counsel previously represented one of the state's witnesses against the defendant. We observed that Ohio courts have generally required defendants, who claim a successive conflict of interest, to demonstrate an actual conflict. *Id.* at ¶ 13, *Jones, supra,* 2008-Ohio-1068, at ¶ 71-78; *State v. McGhee,* 4th Dist. Lawrence No. 04CA15, 2005-Ohio-1585, at ¶ 19-24; *State v. Peoples,* 10th Dist. Franklin No. 02AP-945, 2003-Ohio-4680, at ¶ 36-41.

{¶35} " ' The term of art 'actual conflict' refers not to a personality conflict but to a conflict of interest.' " *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997), citing *Strickland v. Washington*, 466 U.S. 668, 692; *State v. Dunn*, 4th Dist. Pickaway No. 97CA26, 1998 WL 337079 (June 17, 1998). A *possible* conflict of interest exists where the "interests of the defendants *may* diverge at some point so as to place the attorney

under inconsistent duties." *State v. Dillon,* 74 Ohio St.3d 166, 168, 657 N.E.2d 273 (1995), quoting *Cuyler,* 446 U.S. at 356, 100 S.Ct. At 1722, 64 L.Ed.2d at 351, 352, fn. 3. "[A]n *actual* conflict of interest exists if, during the course of the representation, the defendants' interests *do* diverge with respect to a material factual or legal issue or to a course of action." *Dillon* at 169, quoting *Cuyler,* 446 U.S. at 356, fn.3. "[W]hether an actual conflict of interest existed is a mixed question of law and fact, subject to *de novo* review on appeal." *Cuyler* at 342.

{¶36} In *McDonald*, *supra,* 2009-Ohio-5132, the defendant "merely stated that his counsel was 'affiliated' with the state's witness." Further, the defendant stated that his counsel had "previously represented" the witness. *Id.* at ¶ 16. This court held that "[p]rior representation of a witness or victim is by itself insufficient to demonstrate an actual conflict of interest," *id.,* and concluded that McDonald had, at best, demonstrated a potential conflict and pointed to no specific legal, factual or motivational issues that rose to the level of an actual conflict. *Id.*

{¶37} In *State v. Beamon*, *supra,* 2019-Ohio-443, the defense attorney had represented the victim in an unrelated criminal matter and Beamon waived any potential conflict of interest. However, on

appeal appellant challenged the successive representation. The Twelfth District noted that successive representation did not give rise to the same presumption of prejudice as simultaneous representation, and held it is more difficult for a defendant to show that defense counsel actively represented conflicting interests in cases of successive, rather than simultaneous, representation. *Id.* at ¶ 24, citing *State v. Buck*, 1st Dist. Hamilton No. C-160320, 2017-Ohio-8242, ¶ 91. Thus, the court concluded that Beamon failed to demonstrate that an actual conflict of interest existed. *Id.* at ¶ 28. Moreover, the court determined that Beamon failed to demonstrate that he suffered prejudice as a result of the defense counsel's representation of the victim eight years earlier. *Id.* at ¶ 29.

{¶38} In the case sub judice, co-defendant Rieser's docket summary indicates that, on August 31, 2016, the trial court arraigned Rieser, found him indigent, and appointed Attorney Stratton, appellant's trial attorney in the case sub judice. On September 2, 2016, Stratton filed a request for a bill of particulars, a request for notice of intent to use evidence, a request for disclosure of evidence, and a motion to preserve evidence. On September 19, 2016, Stratton filed a motion to withdraw and stated, "Attorney Shawn Stratton has represented the codefendant, Robert S. Tingler, on a prior criminal case." The

trial court granted the motion to withdraw on September 21, 2016. Thus, it appears that Stratton represented co-defendant Rieser for less than thirty days, and some four years before appellant's plea in the case at bar. By contrast, the trial court appointed Attorney Stratton to represent appellant on December 17, 2020, after the court arraigned appellant and found him indigent. Stratton represented appellant in this case from December 17, 2020, until his August 6, 2021 guilty plea.

{¶39} Other than demonstrating that appellant's appointed counsel very briefly represented appellant's co-defendant four years before he represented appellant, appellant did not provide any evidence of actual conflict. In this case, trial counsel's brief representation of appellant's co-defendant did not prejudice appellant or create an actual conflict, and appellant has not established an ineffective assistance of counsel claim because he did not demonstrate an actual conflict of interest. Further, appellant did not explain how his interests diverged from, or are adverse to, the co-defendant's interests on any factual or legal issue. Moreover, the record does not indicate that defense counsel's prior brief representation of Rieser created any conflict.

{¶40} Therefore, after our review in the case sub judice, we believe that appellant merely asserts that trial counsel had conflicting obligations, but provides no specific and credible evidence to link his conviction to the alleged conflict of interest. As such, appellant failed to demonstrate that trial counsel's alleged conflict of interest deprived him of his constitutional right to the effective assistance of counsel.

{¶41} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Tingler*, 2022-Ohio-3792.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal

commences from the date of filing with the clerk.